Filed 6/28/16  Obillo v. Arvest Bank Group CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FLORENCIO I. OBILLO, | D068364 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2014-00025791-CU-BC-CTL) |
| ARVEST BANK GROUP, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Affirmed.

Florencio I. Obillo, in pro. per., for Plaintiff and Appellant.

Malcolm Cisneros, William G. Malcolm and Brian S. Thomley, for Defendant and Respondent.

Florencio I. Obillo appeals from a judgment of dismissal following the sustaining of a demurrer to his second amended complaint (SAC) without leave to amend.  Obillo filed this lawsuit after he defaulted on his home mortgage and the bank sold the home in

a non-judicial foreclosure sale.  In his SAC, Obillo alleged seven causes of action against defendants Arvest Bank Group, Inc. (Arvest) and Central Mortgage Company (Central) and an eighth cause of action against Arvest, Central and Deutsche Bank National Trust Company (DB).  All of the causes of action pertain to the foreclosure.

The trial court entered a judgment in favor of defendants after concluding a settlement agreement in a previous unlawful detainer action barred Obillo's claims and the SAC failed to state a claim for any cause of action in any event.  We conclude the settlement agreement results in a more limited issue preclusion bar but agree the SAC nonetheless failed to state a claim for any cause of action and, therefore, affirm the judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal arises from the sustaining of a demurrer, we summarize the underlying facts stated in the SAC, accepting as true the properly pleaded factual allegations and judicially noticed facts.[1]  (See *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 435-36.)

---

[1]     The trial court granted the parties' requests for judicial notice—the record does not indicate either were opposed—and took notice of a number of documents as requested. (See *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264 [courts may take judicial notice of the existence and recordation of real property records, including deeds of trust, and legally operative documents] disapproved on other ground in *Yvanova v. New Century Mortgage Corporation* (2016) 62 Cal.4th 919.) Neither party disputes the judicial notice ruling on appeal.

A.    *Original Mortgage and Deed of Trust, Modification and Default*

In 2004, Obillo obtained a home mortgage from Downey Savings and Loan Association, which later assigned the mortgage and deed of trust to Central.  In 2008, Obillo had an unpaid principal balance in excess of the original loan amount and entered into a loan modification agreement with Central, which amended and supplemented the deed of trust.  Obillo fell behind on his payments under the modification agreement and, in June 2010, Central recorded a notice of default and election to sell under the deed of trust.

B.    *Request for a Further Modification*

Obillo subsequently filed for bankruptcy protection.  In October 2012, Central wrote to Obillo's bankruptcy counsel and offered to provide information regarding loss mitigation alternatives, including a potential loan modification.  The letter stated Central was not agreeing Obillo qualified for assistance and Central was under no obligation to provide any such assistance, even if Obillo provided all the information requested for evaluation.  In April 2013, Obillo's bankruptcy counsel authorized Central to discuss alternatives directly with Obillo.  Shortly thereafter, Obillo submitted a loan modification application and requested that Central evaluate him under the Home Affordable Modification Program (HAMP).[2]  On May 7, 2013, Central acknowledged timely receipt of Obillo's application and informed him it needed additional information and documentation by May 22.

---

[2]    We describe HAMP, *post*, in the discussion section of this opinion.

3

On May 13, 2013, Obillo dismissed his bankruptcy. The following day, he submitted additional documents regarding the loan modification to Central. On May 23, 2013, Central advised Obillo that Central had not received a number of the documents it had requested and that Obillo was not eligible for any alternative to foreclosure. The letter also described the process for appeal and notified Obillo that Central had assigned him a sole point of contact (SPOC), Kimberly Spencer.

On June 14, 2013, Central recorded a Notice of Trustee Sale, stating the property would be sold on July 10, 2013. On July 1, Spencer informed Obillo his file had been submitted to a loss mitigation specialist.[3] On July 3, she notified him that the foreclosure sale was postponed to August 12, 2013. On July 9, Central sent Obillo a letter stating he was not eligible for any alternative to foreclosure because Central had determined it was unable to offer a modified payment that would be more affordable than Obillo's current payment.

C.   *Foreclosure Sale*

Central proceeded with the nonjudicial foreclosure sale on October 1, 2013, and an assignment of deed of trust and deed upon sale were recorded shortly thereafter.

D.   *Unlawful Detainer Action*

After the sale, DB filed an unlawful detainer action against Obillo pursuant to Code of Civil Procedure section 1161a, subdivision (b)(3), which permits a party to bring an unlawful detainer action where the property has been sold in a nonjudicial foreclosure

---

[3]   The record does not indicate why Central continued to consider Obillo for an alternative to foreclosure after the May 23, 2013 denial letter.

4

sale.  The parties settled and stipulated to a dismissal with prejudice.  Pursuant to the settlement agreement, Obillo released "Deutsche Bank, its agents . . . affiliates, assigns and successors in interest from any and all claims, demands, charges, debts, defenses, actions, obligations, damages, complaints, controversies and liabilities whatsoever which . . . were or could have been brought in or as part of the UD Action."

E.      *Current Action*

Obillo then filed the present lawsuit against Arvest, Central and DB (collectively, Defendants).  Following an initial demurrer, Obillo filed the SAC, which alleges the following causes of action against Arvest and Central:  (1) Breach of Implied Covenant of Good Faith and Fair Dealing; (2) Rosenthal Violations; (3) Fraud and Deceit or Concealment; (4) Unfair Business Practices pursuant to Business and Professional Code sections 17200, 17203, 17500; (5) Promissory Estoppel; (6) Breach of Written Contract; (7) Wrongful Foreclosure and Quiet Title; (8) Disability, Medical Conditions and Source of Income Discrimination pursuant to Government Code section 12955, subsections (e) and (i).  The SAC asserts Arvest is the parent of Central and, thereafter, does not distinguish between the two, referring to them collectively as Central.  The SAC also asserts the cause of action for wrongful foreclosure and quiet title, but no others, against DB.

Defendants demurred to the SAC and the court granted the demurrer, reasoning the release in the settlement agreement barred all of the asserted claims in the SAC and, in any event, the SAC failed to allege facts sufficient to state a cause of action for any of the asserted claims.  The court denied leave to amend because Obillo still had not alleged

5

any fact sufficient to state a valid cause of action and, subsequently, entered judgment against Obillo.

## II.  DISCUSSION

On appeal, Obillo argues the settlement agreement does not bar the presently asserted claims and the SAC pleads facts sufficient to support each claim.  As we explain, we conclude the settlement agreement bars Obillo from asserting any deficiencies in title or failure to comply with the requirements of Civil Code section 2924, and the SAC fails to allege additional facts sufficient to support any other claim.

A.      *Standard of Review*

We review a judgment of dismissal based on an order sustaining a demurrer without leave to amend de novo, exercising our own independent judgment to determine whether the complaint states sufficient facts to constitute a cause of action or a right to the relief requested.  (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 648; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)  We read the pleading as a whole and assume the truth of the facts properly pleaded by the plaintiff, as well as those that are judicially noticeable.  (*Blank,* at p. 318.)  We also consider evidentiary facts found in exhibits attached to a pleading (*Frantz v. Blackwell* (1987) 189 Cal.App.3d 91, 94), and facts found in any attached written instrument control over inconsistent allegations made in the pleadings.  (*Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955.)  However, we do not consider plaintiff's contentions, deductions or conclusions of law or fact.  (*Blank,* at p. 318.)  We may affirm the

6

judgment on any ground apparent from the record, regardless of the grounds upon which the trial court sustained the demurrer.  (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

Where, as here, a demurrer is sustained without leave to amend, the trial court has abused its discretion if "there is a reasonable possibility that the defect can be cured by amendment."  (*Blank*, *supra*, 39 Cal.3d at p. 318.)  The plaintiff may establish such a reasonable possibility for the first time on appeal but the burden of doing so falls squarely on the plaintiff.  (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153.)

B. *Issue Preclusion Bars Claims Related to Title and the Conduct of the Nonjudicial Foreclosure Sale*

1. *Applicable Law*

A judgment in an unlawful detainer action typically has limited res judicata effect, but where the unlawful detainer action is brought in accordance with Code of Civil Procedure section 1161a, subdivision (b)(3), subsequent claims related to questions of title or conduct directly related to the nonjudicial foreclosure sale are typically barred.  (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 255 (*Vella*); see *Orcilla v. Big Sur, Inc.* (2016) 244 Cal. App. 4th 982, 1010-1011 (*Orcilla*) [applying *Vella* to find res judicata bars action for quiet title in this context]; *Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, 976 (*Malkoskie*) [applying *Vella* to find res judicata bars multiple causes of action in this context].)  Code of Civil Procedure section 1161a, subdivision (b)(3) permits the purchaser of property in a nonjudicial foreclosure sale to bring an unlawful detainer action to remove a person that has held over after the sale.  In order to

7

do so, the purchaser of the property must show it acquired the property at a regularly conducted sale in accordance with Civil Code section 2924, which sets forth a comprehensive framework for the regulation of nonjudicial foreclosure sales, including establishing duly perfected title. (See *Melendrez v. D&I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1249.) A judgment in an unlawful detainer action brought under Code of Civil Procedure section 1161a, subdivision (b)(3) is therefore conclusive as to issues regarding the title and any associated irregularities in the conduct of the trustee's sale necessarily determined in accordance with Civil Code section 2924. (*Vella*, 20 Cal. 3d at p. 255; *Malkoskie*, 188 Cal.App.4th at p. 973.)

*Vella*, and the subsequent cases relying on *Vella*, use the more general term res judicata without specifying whether they are referring to the doctrine of claim preclusion or issue preclusion, a practice that has caused some confusion in California case law. (See *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823-824 [discussing differences between issue preclusion and claim preclusion].) Issue preclusion, or collateral estoppel, bars a party from relitigating a previously decided *issue* and does not require the party asserting preclusion to be a party to the prior litigation or to be in privity with such a party. (*Id.* at p. 824-825) It is issue preclusion, and not claim preclusion, that bars relitigation of issues related to compliance with Civil Code section 2925 and perfected title following an unlawful detainer action pursuant to Code of Civil Procedure section 1161a, subdivision (b)(3). (See *Malkoskie, supra,* 188 Cal.App.4th at p. 976 ["[another party] is also entitled to use the judgment as a shield, despite not having been a

8

party to the unlawful detainer, to prevent plaintiffs from relitigating the issue of the alleged defects in title."].)

This issue preclusion bar also applies where the party agrees to entry of a stipulated judgment in the unlawful detainer action. (*Malkoskie*, *supra*, 188 Cal.App.4th at p. 973; *Needelman v. DeWolf Realty Co., Inc.* (2015) 239 Cal. App. 4th 750, 759 ["Under California law, a 'judgment entered without contest, by consent or stipulation, is usually as conclusive a merger or bar as a judgment rendered after trial.' "].) Issue preclusion in this context does not, however, bar claims related to activities not directly connected with question of title or the conduct of the nonjudicial foreclosure sale. (*Vella, supra*, 20 Cal. 3d at p. 256.)

2.      *Discussion*

Here, Obillo had an opportunity to litigate any questions related to title and any purported failures to comply with Civil Code section 2924 in the unlawful detainer action but instead agreed to a release of his claims in exchange for a dismissal with prejudice by Deutsche. The court determined the release barred all of Obillo's claims in the SAC. We agree the release bars Obillo from asserting claims related to the validity of DB's title or any failure to comply with the requirements of Civil Code section 2924 in the present case. In particular, the release bars the cause of action for wrongful foreclosure and quiet title, the only cause of action asserted against DB. However, the release does not bar the remaining claims as they include allegations that do not relate directly to the conduct of the nonjudicial foreclosure sale. (*Vella, supra*, 20 Cal. 3d at p. 256; see also *Orcilla, supra,* 244 Cal.App.4th at p. 1011 [concluding res judicata bars action for quiet title but

9

not equitable cause of action based on unconscionability or cause of action for unfair business practices].)

Obillo's arguments against application of the settlement agreement are unpersuasive. First, Obillo argues the settlement agreement bars only claims against DB because the release is specific to DB. Respondents contend the release extends to Central and Arvest because they are in privity with DB, but the bar here arises from issue preclusion and, therefore, applies regardless of whether privity exists. Issue preclusion bars Obillo from asserting questions regarding issues of title, including irregularities in the conduct of the nonjudicial foreclosure sale, against any other party—including Central and Arvest. (See *Malkoskie, supra,* 188 Cal.App.4th at p. 976 ["[another party] is also entitled to use the judgment as a shield, despite not having been a party to the unlawful detainer, to prevent plaintiffs from relitigating the issue of the alleged defects in title."].)

Second, although his argument is not clear, Obillo appears to argue he could not have brought certain claims related to title in the unlawful detainer action because it was a limited civil action. However, the trial court had the fundamental jurisdiction to decide issues related to title in the unlawful detainer action under Code of Civil Procedure section 1161a, subdivision (b)(3). (See *Orcilla, supra*, 244 Cal.App.4th at p. 1011-1012 [superior court is a court of general jurisdiction with the power to adjudicate issues of title].) Obillo was required to bring any claims regarding title in that action. As Obillo instead stipulated to the dismissal of the unlawful detainer action, he cannot now relitigate such issues by questioning the jurisdiction of the court.

10

C. *The Remaining Allegations in the SAC Do Not State a Valid Cause of Action*

1.      *HAMP, HBOR and NMS Provide No Relief*

Before turning to the individual causes of action, we address Obillo's assertion that he has relief available under the federal HAMP law, California Homeowner Bill of Rights (HBOR), and the National Mortgage Settlement (NMS), as he includes allegations regarding all three throughout the SAC's general allegations and individual causes of actions.  We conclude none afford Obillo relief.

a.      *HAMP*

Obillo generally alleges that Central failed to follow one or more HAMP guidelines in evaluating him for a loan modification.  Relevant here, a borrower typically has no private right of action under HAMP, as the servicer's obligation to follow the HAMP guidelines arises only out of Servicer Participation Agreements (SPAs) contracts to which the borrower is not a party.  (*West v. JP Morgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 787-788, 799 (*West*).)  SPAs are entered into between the Secretary of Treasury and the mortgage servicers pursuant to a federal program aimed at reducing foreclosures by offering incentives to the servicers in exchange for their agreement to offer loan modifications in accordance with HAMP guidelines.  (*Majd v. Bank of America N.A.* (2015) 243 Cal.App.4th 1293, 1301 (*Majd*).)

The only recognized exception we are aware of is where the borrower asserts a cause of action for breach of a Trial Period Plan (TPP) Agreement, to which the borrower is a party, implicitly incorporating the HAMP guidelines.  (*Majd, supra*, 243 Cal.App.4th at p. 1302.)  Under the HAMP guidelines, a servicer first enters into a TPP agreement

11

with the borrower and, if the borrower complies with all terms of the TPP, the servicer offers the borrower a permanent loan modification. (*Ibid*.)

Here, the SAC contains no factual allegations indicating Obillo entered into a TPP Agreement, and he does not allege he did so on appeal. As a result, allegations in the SAC regarding violations of the HAMP guidelines cannot support any cause of action.

b. *HBOR*

Obillo also alleges Central violated various provisions of the HBOR. The HBOR, codified at Civil Code section 2920 et seq., became effective January 1, 2013, and requires servicers to provide borrowers with certain notices regarding loan modifications and potential foreclosures. (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 86, fn. 14.) Specifically, the HBOR prohibits a servicer from proceeding with a foreclosure while the borrower's application for a loan modification is under review—a practice commonly referred to as dual tracking, requires a single point of contact, and includes the framework for a nonjudicial foreclosure set out in Civil Code section 2924, among other things. (*Ibid*.) None of the allegations in the SAC regarding purported violations of the HBOR support relief here.

As an initial matter, we have already concluded issue preclusion bars Obillo from relitigating issues related to Central's compliance with Civil Code section 2924. Further, the HBOR is not retroactive and, therefore, does not apply to actions taken before 2013, including Central's recording of the notice of default in 2010. (See *Rockridge Trust v. Wells Fargo, N.A.* (N.D.Cal. 2013) 985 F.Supp.2d 1110, 1153.)

12

The SAC alleges Central violated the HBOR by recording of the Notice of Sale on June 13, 2013, less than 30 days after the May 23, 2013 denial letter and before the July 9, 2013 denial letter. The HBOR precludes a servicer from recording a notice of sale or conducting a sale while a loan modification request is under review, but provides an exception where the borrower has accepted and subsequently defaulted on a previous written first lien loan modification. (Civ. Code, § 2923.6, subd. (c)(3).) This exception applies here as Obillo previously accepted and defaulted on a written first lien loan modification in 2010.

Next, the SAC alleges Central failed to provide the reasons for denying his request for a second loan modification and failed to give him instructions on how to appeal. The HBOR requires a loan servicer that denies an application for a workout plan or loan modification to advise the borrower of the reasons for the denial and instructions on how to appeal. (Civ. Code, § 2923.6, subd. (f).) However, the exception in section 2923.6, subdivision (c)(3) applies here as well. Further, the SAC indicates Central complied with these notification provisions in any event. The May 23 letter from Central, attached as an exhibit to the SAC, explained Obillo was not eligible for any foreclosure alternatives because he had not provided all of the necessary documentation and included information regarding the appeal process. The July 9 letter explained that Central was unable to offer a more affordable modified payment. Although the portion of this letter attached to the complaint does not include instructions for appeal, it is missing pages and, in any event, Central previously provided the necessary information.

13

The SAC also alleges Central and Arvest refused or failed to provide Obillo with net present value (NPV) data. Although HBOR does contain certain requirements regarding NPV data (§ 2923.6, subd. (f)(3)), Central's denial was based on the affordability of a modification, and these requirements therefore were not applicable.

Finally, the SAC alleges Central failed to designate an effective SPOC. Obillo does not dispute Central assigned an SPOC, but contends the SPOC was not sufficient because he is not fluent in English, the SPOC could not communicate with him in his native language, and the SPOC refused to accept his wife or daughter as a translator or process information from them. The HBOR does require a single point of contact, but it does not require the servicer to provide a contact person able to communicate in the borrower's primary language. (Civ. Code, § 2923.7.) Further, the SAC indicates the SPOC communicated with Obillo over e-mail, such that Obillo could have utilized family members to translate his e-mails to and from the SPOC.

c.      *NMS*

Obillo also alleges Central failed to comply with the NMS. The SAC does not include any allegations indicating, and Obillo does not allege on appeal, Central was a party to the NMS or otherwise required to comply with it. Regardless, individual borrowers such as Obillo have no standing to enforce the NMS. (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 615-616.)

14

2.      *Obillo Has Not Adequately Alleged Facts Sufficient to State a Cause of Action*

We now turn to the individual causes of action, concluding Obillo has not adequately alleged facts sufficient to state a cause of action.

a.      *Obillo Has Not Adequately Alleged a Cause of Action for Breach of Contract or Breach of Implied Covenant of Good Faith and Fair Dealing*

Obillo alleges Central breached the deed of trust, or the implied covenant of good faith and fair dealing implicit in the deed of trust, by failing to properly evaluate him for a loan modification.

In order to state a claim for breach of contract, the plaintiff must allege: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) breach; and (4) the breach caused the plaintiff harm. (*Wall Street Networks Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1178 (*Wall Street Networks*).) "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 349 (*Guz*).) In order to state a cause of action for breach of implied covenant of good faith and fair dealing, the plaintiff must also identify the particular contractual provision that was frustrated by the defendant's conduct, even if not technically breached. (*Ibid*.) The facts alleged here cannot support either cause of action.

15

First, Obillo does not deny or provide any justification for his own default on the 2010 loan modification, which modified and amended the original deed. His nonperformance therefore precludes him from establishing the second element of a cause of action for breach of contract. (See *Wall Street Networks, supra*, 164 Cal.App.4th at p. 1178; *Lewis Publishing Co. v. Henderson* (1930) 103 Cal.App. 425, 429 ["it is elementary that one party to a contract cannot compel another to perform while he himself is in default"].) Further, Central had no duty of good faith to delay or forego foreclosure by providing a loan modification it was not otherwise contractually required to provide in light of Obillo's default. (See *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 479, overruled on other grounds in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn*. (2013) 55 Cal.4th 1169, 1176-1182.)

Second, Obillo fails to identify any specific contractual obligation that required Central to evaluate him for a second loan modification, much less offer him one. Obillo directs us to a reference regarding "Applicable Law" in the original deed and argues it somehow incorporates HAMP, HOBR and other statutes into the deed. However, the plain meaning of the language belies Obillo's assertion. (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [courts look first to the plain meaning of the contract language].) The reference appears in a section of the deed concerning the borrower's right to reinstate after acceleration and describes the timing of such reinstatement and states: "Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of [among other conditions] . . . such other period as Applicable Law might specify." Neither the section

16

nor the reference to Applicable Laws therein addresses loan modifications or any of the laws on which Obillo seeks to rely.

We therefore conclude Obillo has not adequately alleged a cause of action for breach of contract or breach of the implied warranty of good faith and fair dealing.

> b. *Obillo Has Not Adequately Alleged a Cause of Action for Rosenthal Violations*

The SAC alleges Central engaged in "unfair, misleading, fraudulent and wrongful collection activities" in violation of the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act). The trial court concluded foreclosure does not constitute debt collection under the Rosenthal Act. On appeal, Obillo argues Central and Arvest are "debt collectors" as defined by the Rosenthal Act, but fails to address whether they engaged in debt collection activities beyond the scope of an ordinary foreclosure and in violation of the act.

Federal courts have explained conduct associated with a nonjudicial foreclosure typically does not constitute a "debt collection activity" giving rise to a cause of action under the Rosenthal Act. (*Sipe v. Countrywide Bank* (E.D.Cal. 2010) 690 F.Supp.2d 1141, 1151; *Rosal v. First Fed. Bank of Cal.* (N.D.Cal. 2009) 671 F.Supp.2d 1111, 1135; *Izenberg v. ETS Services, LLC* (C.D.Cal. 2008) 589 F.Supp.2d 1193, 1199; *cf. In re Ganas* (Bankr. E.D.Cal. 2014) 513 B.R. 394, 401.) Further, Civil Code section 2924, subdivision (b) expressly states a trustee who issues a notice of default is not subject to the Rosenthal Act. (Civ. Code, § 2924, subd. (b); *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1261-1264.)

17

We recognize there is a limited exception by which debt collection activities by a mortgage servicer acting beyond the scope of the ordinary foreclosure process may give rise to a valid Rosenthal Act cause of action. (See *Walters v. Fidelity Mortgage of Cal., Inc.* (E.D.Cal. 2010) 730 F.Supp.2d 1185, 1203.) In *Walters*, for example, the borrower alleged the servicer knowingly claimed the borrower owed fees she did not owe and, therefore, attempted to collect a debt using false or misleading information in violation of the Rosenthal Act. (*Ibid.*) Here, Obillo does not allege Central made false or misleading statements about the debt he did owe or that Central otherwise engaged in false, misleading or harassing debt collection activities outside the scope of foreclosure. He also has not provided any authority indicating the allegations he does make give rise to a cause of action under the Rosenthal Act, nor are we aware of any.

We therefore conclude Obillo has not alleged facts sufficient to state a cause of action for violations of the Rosenthal Act.

        c.      *Obillo Has Not Adequately Alleged a Cause of Action for Wrongful Foreclosure or Quiet Title*

Obillo argues the SAC states a claim for wrongful foreclosure and quiet title based on allegations regarding irregularities in title and violations of HAMP, HOBR and NMS. As discussed above, Obillo cannot support any cause of action based on violations of HAMP, HOBR or NMS and issue preclusion bars Obillo from asserting claims regarding irregularities in title or the conduct of the nonjudicial foreclosure sale.

Further, even absent issue preclusion, Obillo concedes the settlement agreement released DB from claims that could have been brought in the unlawful detainer action,

18

which includes issues of title. (See *ante*, section II.B.2.) Obillo cannot assert quiet title against the remaining parties as it requires adverse claims to the title against which one seeks a determination. (*West, supra*, 214 Cal.App.4th at p. 803.)

As such, Obillo has not adequately alleged a cause of action for wrongful foreclosure or quiet title.

### d. *Obillo Has Not Adequately Alleged a Cause of Action for Fraud and Deceit or Concealment*

Obillo alleges Central falsely represented that it would evaluate him for a loan under the HAMP guidelines or, alternatively, concealed that it was not following the HAMP guidelines, and that Central solicited him to dismiss his bankruptcy in order to pursue loan modification.

To state a cause of action for fraud, or deceit, one must plead facts sufficient to show: (1) a misrepresentation, such as a false representation, concealment, or nondisclosure; (2) knowledge of falsity; (3) an intent to induce reliance on the misrepresentation; (4) actual and justifiable reliance; and (5) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 (*Lazar*).) Concealment is a species of fraud or deceit. (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 868.) To allege concealment, one must plead facts establishing: (1) suppression of a material fact; (2) a duty to disclose the suppressed fact; (3) an intent to defraud; (4) lack of knowledge of the suppressed fact by plaintiff; (5) action or inaction taken by plaintiff as a result of the suppressed fact; and (6) resulting damage. (*Ibid*.) Heightened pleading standards apply to fraud claims and require the plaintiff to set forth

19

specifically how, when, where, to whom and by what means the defendant made the underlying false representations. (*Lazar, supra,* 12 Cal.4th at p. 645.)

Obillo fails to plead facts with the requisite particularity to establish Central fraudulently misrepresented or concealed the criteria with which it intended to evaluate Obillo for a loan modification program. The SAC does not allege any particular statements made by Central, or a representative thereof, indicating Central would follow the HAMP guidelines, or otherwise misrepresenting Central's loan modification criteria. Further, none of the communications from Central to Obillo referenced in or attached to the SAC even mention HAMP or the HAMP guidelines. Obillo alleges his attorney sent Central a letter on April 2, 2013, requesting Central structure a loan modification pursuant to HAMP but the attached letter of the same date also makes no mention of HAMP. The SAC also alleges Central "inferred" it had used the federal HAMP/HAFA guidelines—or concealed that it had not done so—by stating it was unable to offer a loan modification "based on the guidelines provided us," in its July 9, 2013 denial letter. But this statement also makes no reference to HAMP and is not sufficient to establish fraud or concealment.

Obillo also argues he dismissed his bankruptcy at Central's request and in reliance on Central's promise to evaluate him for a loan modification. We have already concluded the SAC fails to plead facts sufficient to establish Central agreed to comply with the HAMP guidelines. With respect to the bankruptcy, the only communications alleged in the SAC mentioning it are the communications between Central and Obillo's bankruptcy counsel in which Central offered to provide information regarding foreclosure

20

alternatives, and Obillo's counsel permitted Central to communicate directly with Obillo. There are no factual allegations in the SAC indicating Central did or said anything to Obillo or his counsel requesting or requiring he dismiss his bankruptcy claim in order to pursue a loan modification.

Finally, the SAC does not adequately allege Obillo relied on Central's alleged representations or omissions to his detriment. The SAC simply states in a conclusory fashion, Central's misrepresentations caused him "to forego other remedies, cures or alternatives including protective litigation, more efficient disposition options, sale, lease, obtain[ment of] equity or credit co-owner, or to continue bankruptcy." However, this is inadequate for pleading purposes, as he was already in default on his first loan modification and does not allege any facts indicating that he was actually harmed as a result of foregoing any of these options or that any were actually viable alternatives. (See *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1062-1063 [plaintiff must allege damages caused by the reliance and no liability attaches if the damages sustained were otherwise inevitable].)

Based on the foregoing, we conclude Obillo has not met the pleading requirements to state a cause of action for fraud or concealment.

> e.  *Obillo Has Not Adequately Alleged a Cause of Action for Promissory Estoppel*

Obillo also asserts a claim for promissory estoppel alleging, similarly to his fraud cause of action, Central promised to evaluate him for a loan modification under the HAMP guidelines.

21

A cause of action for promissory estoppel requires facts sufficient to show:  1) a promise that is clear and unambiguous in its terms; 2) foreseeability the plaintiff would rely on the promise; 3) actual and reasonable reliance on the promise by the plaintiff; and 4) injury as a result.  (*Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945.)  As with fraud, promissory estoppel must be specifically plead.  (*Smith v. City and County of San Francisco* (1990) 225 Cal.App.3d 38, 48.)  In particular, the promise must be " 'clear and unambiguous in its terms' " and cannot be derived from preliminary discussions and negotiations.  (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1044.)

Here, the SAC does not articulate a clear and unambiguous promise.  The SAC contends Central "made clear, definite and certain promises to Plaintiff to properly and honestly process and evaluate Plaintiff for the 'Making Home Affordable program' " but the SAC does not allege a single reference to HAMP, let alone any particular promise, made by Central, or a representative thereof.  The SAC therefore fails to adequately allege a promise.  (See *Garcia v. World Savings, FSB, supra*, 183 Cal.App.4th at p. 1044.)  Further, even if there were such a promise, Obillo also cannot establish injury resulting from reliance on that promise, for the same reasons discussed *ante* with respect to his fraud claim.

On appeal, Obillo argues, more generally, that Central failed to properly evaluate him for a modification or solution.  To the extent Obillo intends to argue he dismissed his bankruptcy based on—or otherwise detrimentally relied on—a promise by Central to simply evaluate him for a loan modification under any guidelines, the claim must fail because Central did evaluate him for a loan modification.  Further, as we conclude herein

22

with respect to HAMP, HBOR, NMS and the unfair business practices cause of action, the SAC does not adequately allege Central conducted the evaluation in an unlawful or unfair manner.

Based on the foregoing, we conclude Obillo has not met the pleading requirements to state a cause of action for promissory estoppel.

f.      *Obillo Has Not Adequately Alleged a Cause of Action for Unfair Business Practices*

Next, Obillo asserts a claim for unfair business practices based on the alleged violations of HAMP, HBOR, NMS and the Rosenthal Act.  A cause of action for unfair business practices under the Unfair Competition Law (UCL) may be predicated on any unlawful, unfair or fraudulent business act or practice (*Kiwkset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320.)  Here, we have already concluded Central's actions were not unlawful with respect to HAMP, HBOR, NMS or the Rosenthal Act.

However, courts have concluded certain actions, such as dual tracking, may nevertheless amount to unfair business practices where the statutory laws are instructive of fair practices, even if not legally enforceable due to the specific facts of the case.  (See *Jolley v. Chase Home Finance*, *LLC* (2013) 213 Cal.App.4th 872, 907-908 [concluding the practice of dual tracking was unfair even where HAMP was not at issue and section 2923.6 was not yet in effect]; *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 84-85 (*Lueras*) [concluding the sale of a home in foreclosure within 30 days of a written denial of modification was an unfair practice under the UCL even though HBOR was not effective at the time].)  Here, Central either complied with the

23

statutory requirements or was not required to comply based on an exception in the statute itself. (Civ. Code § 2923.6, subd. (c)(3).) Further, it does not appear Central engaged in unfair dual tracking as Obillo's home was not sold in foreclosure until October, 2013, three months after the July 9, 2013 denial letter.

Based on the foregoing, we conclude Obillo has not alleged facts sufficient to state a cause of action for unfair business practices.

g.     *Obillo Has Not Adequately Alleged a Cause of Action for Discrimination Under FEHA or the Unruh Act*

In his final cause of action, Obillo alleges Central discriminated against him based on his disability and source of income in violation of the Fair Employment and Housing Act (FEHA) (Govt. Code, § 12955) and the Unruh Civil Rights Act (Civ. Code, § 51 et seq.). The trial court concluded FEHA, subdivision (e) does not include protections for loan modifications. On appeal, Obillo does not address subdivision (e), instead arguing he states a claim under the Unruh Act and subdivision (i) of FEHA.[4]

The Unruh Act generally prohibits business establishments from arbitrarily discriminating against customers on a number of grounds, including disability and occupational status. (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 167;

---

[4]     We note at least one court has held subdivision (e) of FEHA does precludes discrimination on the basis of source of income by a mortgage lender. (Govt. Code, § 12955 subd. (e).) (See *Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1416 (*Sisemore*).) However, we need not decide whether subdivision (e) permits a claim against Central here because Obillo does not argue subdivision (e) on appeal. (*Kelly v. CB&I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 452 ["point not raised in opening brief will not be considered"].) Further, as discussed herein, Obillo fails to state a claim for discrimination in any event.

*Sisemore, supra*, 151 Cal.App.4th at pp. 1404-1406.) Subdivision (i) of FEHA makes it illegal for "any person or other organization or entity whose business involves real estate-related transactions to discriminate against any person in making available a transaction, or in the terms and conditions of a transaction, because of…source of income…[or] disability." (Govt. Code, § 12955, subd. (i).) Obillo does not provide any legal authority indicating a loan modification is a real estate-related transaction under FEHA, nor are we aware of any. Regardless, Obillo fails to state a claim under either FEHA or the Unruh Act because he has not adequately alleged discrimination.

Generally, there are two types of illegal discrimination, disparate treatment and disparate impact. (*Heard v. Lockheed Missiles & Space Co.* (1996) 44 Cal.App.4th 1735, 1748.) Disparate treatment is intentional discrimination against one or more persons in a protected class. (*Guz, supra,* 24 Cal.4th at p. 354, fn. 20.) A cause of action for discrimination based on disparate treatment requires factual allegations indicating one or more members of a protected class were treated differently than similarly situated individuals and evidence of discriminatory motive. (*Dept. of Fair Employment & Housing v. Superior Court* (2002) 99 Cal.App.4th 896, 902; *Internat. Brotherhood of Teamsters v. United States* (1977) 431 U.S. 324, 335, fn. 15.) A cause of action for discrimination based on disparate impact requires factual allegations indicating facially neutral treatment of different groups in fact resulted in a protected group being treated more harshly than another. (*Internat. Brotherhood of Teamsters,* at p. 336, fn. 15; *Guz,* at p. 354, fn. 20.)

Here, the SAC does not allege, and Obillo does not argue on appeal, any facts indicating Central refused to provide him a loan modification—or took any other action—*because of* his disability or source of income, any other evidence of discriminatory motive, or that any other similarly situated individuals were treated differently. The SAC contends Central "directly, indirectly, or in effect, precluded Plaintiff's VA Navy 'disability income' as a 'source of income.' " Even if true, this allegation, alone, is not sufficient to establish discrimination as it does not indicate Central did so *because of* Obillo's disability or source of income—as opposed to some other reason such as his failure to provide the proper documentation. On appeal, Obillo simply asserts Central discriminated against him on the basis of disability or source of income by, essentially, failing to properly evaluate him for a loan modification. This conclusory assertion is insufficient to state a cause of action.

### D. *Leave to Amend*

Obillo has already amended his complaint twice and does not assert on appeal that he could amend it further to allege any additional facts. Obillo has not met his burden with respect to leave to amend and we conclude the trial court did not abuse its discretion in sustaining the demurrer without leave to amend.

DISPOSITION

The judgment is affirmed.


                                                        IRION, J.

WE CONCUR:


BENKE, Acting P. J.


O'ROURKE, J.